HENRY SEIBERT *vs.* MINNEAPOLIS & ST. LOUIS RY. Co. *et al.*

Argued June 13, 1894. Affirmed June 28, 1894.

<table>
<tr><td>58</td><td>39</td></tr>
<tr><td>67</td><td>456</td></tr>
<tr><td>58</td><td>39</td></tr>
<tr><td>71</td><td>534</td></tr>
<tr><td>58</td><td>39</td></tr>
<tr><td>79</td><td>298</td></tr>
</table>

No. 8642.

**Granting foreclosure held not a departure from the complaint.**

*Held,* that this action can be maintained for the purpose of foreclosing the mortgage of which plaintiff is trustee, and the granting of that relief is not a departure or a material variance from the cause of action alleged in the complaint.

**A former decision explained.**

*Held,* further, that on a former appeal in this action (52 Minn. 246) this court did not hold that this action could not be maintained for that purpose, and such was not the effect of that decision.

**Debt payable out of a particular fund.**

While it is a rule that when a note or bond is, by its provisions, payable out of a particular fund, and no other provision is made for its payment, the liability to pay it exists only when the fund exists, and to the extent of that fund; but, *held,* this rule does not apply where the mortgage securing the bond provides also another fund out of which the bond is made payable, but in such case the bond is payable out of either or both funds.

**Defects in complaint waived by failure to object in season.**

Certain provisions of the mortgage construed, and *held* the complaint does not allege, and the court does not find, any default in said mortgage, by reason of the failure to pay interest on the bonds secured by said mortgage. There being no objection to the sufficiency of the complaint until the close of the trial, when the findings of fact were being prepared, *held,* the defendant, by failing sooner to object, waived the insufficiency of the

complaint, if, by any reasonable intendment. it can be held to contain a fair inference of the necessary facts: Certain other provisions of the mortgage construed, and *held*, under this rule, the complaint contained a fair inference of facts constituting a default in said mortgage by reason of a failure to keep the rolling stock of the mortgaged railroad in repair, and to replace the same when lost or destroyed.

**Error not prejudical to appellant, disregarded.**

Where the junior mortgagee makes the holders of prior mortgages parties to a suit to foreclose his mortgage, and the court declares his mortgage prior, as to certain of the mortgaged property, *held*, the mortgagor is not aggrieved thereby, and cannot, on his appeal, assign this as ground of error.

Appeal by defendant, the Minneapolis & St. Louis Railway Company, from a judgment of the District Court of Hennepin County, *Seagrave Smith*, J., entered June 29, 1893, decreeing foreclosure of the Improvement and Equipment mortgage upon its railway and directing a sale of the property mortgaged.

This action was commenced June 28, 1888, in the District Court of Hennepin County by Henry Seibert, trustee. By it he sought, among other things, to obtain the appointment of a receiver to take possession of, manage and operate the Minneapolis and St. Louis Railway and appurtenant property pending the action; to have an account taken of the amount due upon each and all the mortgages and upon any and all liens and of all debts of the Railway Company, and to obtain a sale of the mortgaged property and franchise and have the proceeds applied in payment of such mortgages, liens and debts according to priority and equity. William H. Truesdale was on the same day appointed such receiver and took possession of the railway and of all the property of the Company and has since operated the road. On September 14, 1889, Robert Benson and others, holding bonds secured by one of the prior mortgages, applied and were admitted as defendants in this action. On their petition the District Court made an order March 9, 1892, directing the receiver to pay interest past due on their bonds. The plaintiff appealed to this court where the order was affirmed. *Seibert* v. *Minneapolis & St. L. Ry. Co.*, 52 Minn. 246. The action had been tried and submitted on its merits before this decision was handed down. Plaintiff, without amending his complaint, then abandoned

his effort to obtain a sale of the railway property clear of the liens of prior mortgages and have them paid off from the proceeds. But he asked the court to foreclose the Improvement and Equipment mortgage and direct a sale subject to the prior mortgages. The adverse parties contended that this could not be done under the complaint as it stood and that the action should be dismissed. The trial court made findings and ordered judgment for plaintiff. Defendants appeal.

*Edward S. Isham*, for appellant.

The court below had no authority to render this decree after the opinion and judgment of this court on the merits of the cause presented by the complaint in *Seibert* v. *Minneapolis & St. L. Ry. Co.*, 52 Minn. 246. *Skillern's Ex'rs* v. *May's Ex'rs*, 6 Cranch 267; *Ex parte Dubuque & P. Railroad*, 1 Wall. 69; *Gaines* v. *Rugg*, 148 U. S. 228.

The obligation of the Improvement and Equipment bonds is conditional and not absolute, and the condition was not alleged or shown to have occurred.

The decree is unsupported by any finding of fact which establishes any default in the conditions of the mortgage. Such default is a condition precedent of any right of foreclosure. *Rochester L. Co.* v. *Stiles & P. P. Co.*, 135 N. Y. 209; *Rumsey* v. *Briggs*, 139 N. Y. 329; *Corcoran* v. *Chesapeake & O. C. Co.*, 1 MacAr. D. C. 358.

The complaint does not aver any default in the covenants to repair the rolling stock. It does not even indirectly aver any facts whatever regarding such default. It simply advances a legal conclusion that "defendant has neglected to keep and perform its covenants to keep the rolling stock in good repair." *Price* v. *Doyle*, 34 Minn. 400; *Masterson* v. *Townshend*, 123 N. Y. 458.

*J. M. Shaw, Julian T. Davis, T. S. Wright*, and *Edward S. Rapallo*, for respondents.

No demand was made that the bill of complaint be made more specific, no demurrer was interposed or other pleading assailing its sufficiency. The evidence upon which the court proceeded in arriving at its conclusions of fact is not before this court. No case

was made or bill of exceptions signed. All that appear are the conclusions of fact and law made by the court. The record nowhere discloses any objection on the part of the defendant railway company to the trial of such issues as are embraced in the findings of the court and the presumption is that the findings were justified by the evidence and that such evidence was admitted without objection and that the parties voluntarily consented to try all issues covered by the findings of the court, whether within the pleadings or not. *St. Paul & N. P. Ry. Co.* v. *Bradbury*, 42 Minn. 222; *Baker* v. *Byerly*, 40 Minn. 489; *Salisbury* v. *Bartleson*, 39 Minn. 366.

An appellate court will not on appeal set aside proceedings on account of the insufficiency of the complaint unless it is clearly and substantially defective. *Piper* v. *Johnston*, 12 Minn. 60; *New York Cent. Ins. Co.* v. *National P. Ins. Co.*, 14 N. Y. 85; *White* v. *Spencer*, 14 N. Y. 247; *Hurd* v. *Simonton*, 10 Minn. 423.

CANTY, J. This is an action brought to foreclose a mortgage for $3,887,000 on the railroad franchises and property of the defendant the Minneapolis & St. Louis Railway Company, dated October 12, 1882, and made to the Central Trust Company, as trustee. The plaintiff, Seibert, was subsequently substituted as trustee.

The railroad of the mortgagor was built part at a time. After the first two divisions were built, each was mortgaged separately. A third mortgage was placed as a first lien on the next extension or third division, and also covered the first two divisions as a second lien. A fourth mortgage is a first lien on the fourth extension or division, and covers the other three divisions as a lien subsequent to said other three mortgages. In this manner seven mortgages were placed, each of which is a first lien on one division, and stands in its order as a lien on the other divisions, except that next after the sixth mortgage is a mortgage known as the "Income Mortgage," secured on the income of most of the road. Subsequent in point of time to these eight mortgages is the mortgage here in suit, of which plaintiff is trustee, known as the "Improvement and Equipment Mortgage." It was given to secure 4,000 bonds of $1,000 each, but only 3,887 of these bonds have been issued, and are now outstanding. It is provided in this mortgage that all the rolling stock purchased

or paid for in whole or in part with the proceeds of these bonds should be marked, and a schedule of it furnished the trustee, and that this mortgage should be a first lien on all such property. It also covered all the divisions of the road as a lien subsequent to the other eight mortgages. A receiver was duly appointed, who took possession of the road, and subsequently the action was tried, and judgment ordered for the plaintiff, declaring this mortgage a first lien on a part of the rolling stock and some other property, and a lien subsequent to the other mortgages on the rest of the road. From the judgment entered thereon the defendant mortgagor appeals to this court. No settled case or bill of exceptions was ever made or filed.

1. All of the trustees of other said mortgages were made parties to this suit, and the complaint sets out the rights and priorities of the prior mortgages as plaintiff claimed them to be, and prayed that the amount of each be determined, and the property mortgaged be sold free and clear of all of said incumbrances, to pay all sums due on all of them in the order of their priority, and that such sale be held to foreclose and bar all liens and incumbrances of all parties to this suit.

It is claimed by appellant that the object of this suit was foreign to the plaintiff's trust; that it was an action to wind up the affairs of the corporation, and not to foreclose plaintiff's mortgage; that to decree the foreclosure of this mortgage alone under that complaint is a departure, or a material variance, from the complaint.

We are not of that opinion. If a part of the relief asked was foreign to plaintiff's trust, none of the relief granted was. Plaintiff asked more relief than the foreclosure of his mortgage, but the facts alleged by him in his complaint showed that he was not entitled to any more. See former appeal, *Seibert* v. *Minneapolis & St. L. Ry. Co.,* 52 Minn. 246, (53 N. W. 1151.) If the complaint demanded more relief than plaintiff was entitled to on the facts pleaded, this is no reason why he should not have the part of that relief to which he was entitled. But the statute goes further than that. 1878 G. S. ch. 66, § 267, provides that if there is no answer the relief cannot exceed that demanded in the complaint, but in any other case the court may grant any relief consistent with the case made by the complaint, and embraced within the issue. See, also, *Connor* v. *Board*

*of Ed.,* 10 Minn. 439 (Gil. 356); *Metzner* v. *Baldwin,* 11 Minn. 150 (Gil. 95); *First Div. St. P. & P. R. Co.* v. *Rice,* 25 Minn. 278; *Canty* v. *Latterner,* 31 Minn. 239, (17 N. W. 385.)

2. Appellant contends that such decision of this court in this case in 52 Minn. 246, (53 N. W. 1151,) disposed of this case, and that the District Court had no authority afterwards to enter the judgment herein entered. We do not agree with appellant. On that appeal this court did not so hold. It merely held that prior mortgagees were entitled, out of the income in the hands of the receiver, to have their interest paid, without being compelled to elect to declare their principal due, and join with plaintiff in foreclosure of their mortgages in this action, and "that there is no rule or principle, either in law or equity, upon which a court may require a senior mortgagee, against his will, at the instance of a junior mortgagee, to foreclose his mortgage before it is due." This was not holding that the plaintiff could not for this reason proceed to foreclose his own mortgage. In fact that appeal was taken from a provisional order, and did not involve the whole case; so that the most that could be claimed for it is that it established the law of the case as to further proceedings. But it laid down no such law as claimed by appellant.

3. The bonds here in suit contain the following provision: "This bond is payable according to its tenor, with cumulative interest, out of the proceeds of property purchased or paid for with the same, and out of the net income of the railway company applicable to such payment; and no dividend shall be made on the stock of the railway company while any interest on this bond is overdue and unpaid." It is contended that this bond is payable only out of the funds specified in this clause, and that the funds are not an absolute liability of the mortgagor. Counsel for appellant cites cases such as *Kelly* v. *Bronson,* 26 Minn. 359, (4 N. W. 607,) where the instrument was payable out of a particular fund, and no other provision was made for its payment. This is not such a case.

Counsel also cites cases, such as *White* v. *Miller,* 52 Minn. 367, (54 N. W. 736,) where there was an actual repugnancy or conflict between the terms of the note or bond and the terms of the mortgage, and it was held that the terms of the note or bond should control where the suit was not for foreclosure, but for personal judgment. But this is a foreclosure suit, and besides there is no such repugnancy. The

bond recites that it is payable out of certain funds, and the mortgage states that it is payable out of these same funds, and also out of still other funds.    There is nothing repugnant or conflicting in this. The mortgage secures the bond according to its terms, and also by providing additional funds out of which it may be paid.    Neither was this additional fund provided by the mortgage merely as security that the fund provided by the bond should be properly applied. The mortgage will not bear that construction.    The former funds are as directly applicable to the payment of the bonds as the latter funds.

4. It is claimed by appellant that there is no sufficient allegation and no sufficient finding of default in the mortgage of plaintiff to entitle him to commence foreclosure of the same.    The only finding of fact made by the court as to a default is as follows: "Upon the pleadings, and as between the plaintiff and the defendant the Minneapolis & St. Louis Railway Company, I find the allegations of the complaint with respect to defaults made by the mortgagor, the Minneapolis & St. Louis Railway Company, in the conditions of the said improvement and equipment mortgage, to be true, as therein stated.    The alleged default, in not using income property applicable thereto for the payment of interest on the improvement and equipment mortgage bonds, is also shown by the evidence."    This is simply a finding that the evidence shows and the court finds what the pleadings show, and nothing more.

The complainant attempts to set up two defaults in the conditions of this mortgage:

First, in failing to apply net earnings to the payment of interest due on the bonds; and,

Second, in failing to repair and replace the rolling stock.

As to the first ground of default, it is alleged in the complaint that it is provided by the mortgage "that until default shall be made in the payment of principal or interest of the said bonds, or some one of them, and shall have continued for a period of *two years,* the said party of the first part shall be suffered and permitted to possess, manage, operate, and enjoy the said mortgaged property, railways, and franchises, and every part thereof, with the equipments thereof and the appurtenances thereunto belonging, and to take and use the tolls, incomes, rents, issues, and profits thereof,

in the same manner and with the same effect as if said mortgage had not been made; that if default shall be made in the payment of principal or interest, and shall continue for the period of *two years*, * * * it shall be lawful for said trustee to enter into and upon, and to take and possess," the mortgaged property, franchises, etc., and proceed to foreclose. "*Provided, however*, that such power of entry, and of sale and of foreclosure, may be exercised, as to the railways, equipment, income and other property embraced herein, subject to the conditions and restrictions herein generally provided, as follows: * * *

"(b) If and whenever the mortgagor company or its successors, having net income applicable, under the provisions hereof, to the payment of the principal or interest of the said bonds, shall neglect or refuse to apply such net income to the payment of any such principal or interest then due and payable, and such neglect or refusal shall continue for the period of *three months*. * * *

"(4) That where such default in payment of interest shall be made, the payment of such interest having been demanded by presentation at the company's office or agency, in the city of New York, of the matured coupons, and such default shall continue for the period of *two years* after such demand, or in case the mortgagor company, its successors or assigns, shall suffer or commit the breach of covenant mentioned in subdivisions (a) and (b), above stated, and such breach or breaches shall have continued for said period of six and *three months*, respectively, then and thereupon, in either such case, the principal of all of said bonds shall, at the election of said trustee, to be signified to the railway company or its successors by the said trustee in writing, become immediately due and payable."

The complaint further alleges: "The defendant the Minneapolis & St. Louis Railway Company made default in the payment of the interest coupons attached to the bonds secured by said mortgage as follows, to wit: On all coupons attached to said bonds, numbered from 2,001 to 4,000, inclusive, which became due and payable on July 1, A. D. 1887, and upon all of the coupons attached to the bonds issued under the mortgage, which became due and payable on the 1st day of January, A. D. 1888, by refusing to pay the same when, on said day, they were duly presented for payment, and such payment duly demanded; that said default has continued to

the filing of this complaint, *notwithstanding the said defendant has received net earnings from the use and operation of the property upon which such improvement and equipment mortgage is a first lien, which earnings should have been applied in payment of such past-due coupons ratably and without discrimination.* Wherefore, this plaintiff alleges that said defendant has received net income, applicable, under the provisions of the mortgage by which said bonds were secured, to the payment in part of the interest which became due and payable on the said January 1, A. D. 1888; that it has neglected and refused to make such application of such net income; * * * that such refusal and neglect to properly apply income has continued for a period of more than *three months* after a demand therefor. * * * Wherefore, this plaintiff has duly elected to declare, and has duly declared, the principal of said bonds, as well as the past-due interest which has accrued thereon, due and payable, and now brings this, his bill of complaint, as authorized by the provisions of said bonds and mortgage, for a foreclosure of the same, and for other relief."

The complaint further alleges that the mortgage covers, as a part of the property mortgaged, "all revenues, rates, tolls, sums of money, rents, issues, profits, and incomes arising or to arise from the said railway, or other the premises thereinbefore expressed to be conveyed, or any part thereof which shall remain after the payment of all operating expenses, and expenses necessary, and proper repairs and replacements, and *in the payment of fixed charges* upon the property thereinbefore described, *prior in lien to the lien of said mortgage thereon.*"

The answer of the mortgagor to this complaint contains no denial whatever, and makes the following admission: "Answering the complaint of the plaintiff in the cause above entitled, the defendant the Minneapolis & St. Louis Railway Company admits that there may have been earnings received by it from the use and operation of the property upon which its improvement and equipment mortgage is a first lien, which has not been applied to the payment of the interest upon the bonds secured by said mortgage." While we do not think that these allegations of the complaint and answer, taken alone, would be sufficient to show a default in the mortgage, they cannot be taken alone. The mortgage is made a part of the findings

of fact, and is set out in full in the record, and made a part of the judgment roll. It contains the following clause not found in the complaint: "Art. 4. The party of the first part hereby covenants to pay the principal sum of the moneys secured by the aforesaid bonds, and semiannual interest thereon, represented by the coupons of the said bonds, as the same shall severally mature, and expressly covenants well and faithfully to apply the net earnings and income from the operation of the railway and property hereby mortgaged, after payment of all operating expenses, including taxes and the ordinary replacements and renewals, and *the payment of the interest upon the aforesaid prior mortgages thereon*, to the payment of the moneys to accrue upon the aforesaid bonds secured by this mortgage or deed of trust, as well for the principal as for the interest thereof."

Taking all of these provisions of the mortgage, and construing them together, they mean that a failure for *two years* to pay some part of the interest on these bonds, whether there is any income applicable to such payment or not, constitutes a default. But a failure for *three months* to pay such interest, during which time there is income applicable to the payment thereof, also constitutes a default. It is not claimed by plaintiff that there was a default under the two-years clause, but that there was under the three-months clause. It is alleged that interest fell due on July 1, 1887, which remained unpaid at the time the complaint was filed (June 28, 1888),—nearly a year; that "defendant has received net earnings from the use and operation of the property upon which such improvement and equipment mortgage is a first lien, which earnings should have been applied in payment of such past-due coupons." The complaint alleges the receipt of no net income, except from property on which this mortgage was a first lien, and assumes that such income should be applied in the first instance to the payment of this interest. The mortgage does not so provide, but, as appears by article 4 aforesaid, applies the net earnings and income "from the operation of the railway and property hereby mortgaged" to "the payment of the interest upon the aforesaid prior mortgages" before it is to be applied to the payment of interest on these bonds. This does not, as claimed by counsel, provide that such income shall be first applied to the interest on such prior

mortgages, only to the extent that they are prior, but to their full extent,—to the full amount of the interest due on such prior mortgages,—before such income is applied to the interest on these bonds. The fact that plaintiff's mortgage requires the mortgagor to furnish to the trustee at stated times a statement of its gross receipts, its operating and other expenses, including interest on mortgages prior in lien, and "net income applicable, under the provisions hereof," to the interest on these bonds, cannot change this result.

Besides, the complaint does not allege how much net income was received; it might be one cent, to apply on a semiannual interest payment on these bonds of over $100,000. Neither does it appear how long the failure to apply such net-income on these bonds continued after it was received. Under the rule hereinafter stated, we must hold that by no fair inference or reasonable intendment can it be held that the complaint alleges that there was any default in the mortgage by reason of failure to pay interest or apply net income thereto.

(2) As to the second ground of default, the complaint alleges that it is provided by the mortgage: "That the mortgagor company shall keep and maintain, at its own proper cost and expense, so long as said bonds, or any coupons thereof, shall be outstanding and unpaid, the said locomotive engines, cars, or other equipment and rolling stock, in good order and repair, and to promptly replace, at its own proper cost and expense, any of the same which may be destroyed or rendered worthless, from any cause whatever, during the life of any of said bonds or coupons as aforesaid, by other locomotive engines, cars, equipment, or rolling stock, of at least equal value." "That if default shall be made in the payment of principal or interest, and shall continue for the period of two years, or if, and whenever, the mortgagor company, or its successor or successors, shall make default or breach in the performance or observance of any such other obligation, condition, or requirement above set out, and it shall continue for the period of *two years,* then, and in either of such cases, it shall be lawful for the said trustee to enter into and upon, and to take and possess," the mortgaged property, franchises, etc., and proceed to foreclose:

"Provided, however, that such power of entry, and of sale and of
    v.58m.—4

foreclosure may be exercised, as to the railways, equipment, in-come, and other property embraced herein, subject to the conditions and restrictions herein generally provided, as follows:

"(a) If and whenever the mortgagor company or its successors shall commit or suffer a breach of the covenants hereof as to maintaining and keeping in repair the said locomotive engines, cars, and other rolling stock or equipment, or as to replacing, as hereinbefore provided, such as may be destroyed or rendered worthless, or as to the insurance of the same, and such breach shall have continued for the period of *six months*."

"That the defendant the Minneapolis & St. Louis Railway Company has made default, * * * and has also neglected to keep and perform its covenants to keep in good repair the rolling stock upon which said improvement and equipment mortgage is a first lien, and to replace such rolling stock when lost or destroyed, * * * and this breach of covenant to repair and replace has continued for a period of more than *six months*. Wherefore, this plaintiff has duly elected to declare, and has duly declared, the principal of said bonds, as well as the past-due interest which has accrued thereon, due and payable, and now brings this, his bill of complaint, as authorized by the provisions of said bonds and mortgage, for a foreclosure of the same, and for relief."

The answer of the mortgagor contains no denial, as before stated, and contains this admission: "Further answering, the defendant avers that the rolling stock upon which said mortgage is a first lien, and which it is alleged this defendant neglected to keep in good repair, and to replace that which had been lost or destroyed, that said rolling stock was in process of repair and replacement at the time of the commencement of this suit, and has now been fully replaced and repaired."

It is contended by counsel for appellant that the complaint does not allege any default in the mortgage; that it does not allege any breach of this covenant to keep in repair and replace rolling stock; that the allegation that defendant "has also neglected to keep and perform its covenants to keep in good repair the rolling stock, * * * and to replace such rolling stock when lost or destroyed," is a mere conclusion of law; that the complaint does not allege that any rolling stock was lost or out of repair. We

agree with counsel that, according to the rules of good pleading, this allegation is a mere conclusion of law, and a demurrer to the complaint, if timely made, would have to be sustained. But if no objection is made to the complaint, for such insufficiency, until long after the proper time to make it, even a conclusion of law may be sustained, if, by any reasonable intendment, it can be held to contain an inference of the necessary fact. This doctrine has often been applied in this court. In *McArdle* v. *McArdle,* 12 Minn. 98 (Gil. 57), it is said: "When the objection is not interposed until after the issue is made up, and the cause called for trial, or until after verdict and judgment, it should not be allowed to prevail, if the proceedings can be sustained by any reasonable intendment." In *Smith* v. *Dennett,* 15 Minn. 81 (Gil. 59), the syllabus written by the court is as follows:

"The objection, made for the first time in the Supreme Court on appeal from a judgment by default, that the complaint does not state a cause of action, should not be favored, and the judgment should be sustained if a cause of action is fairly inferable, by any reasonable intendment, from the facts in the complaint." See, also, *Frankoviz* v. *Smith,* 34 Minn. 403, (26 N. W. 225.)

Applying this rule, this court held a complaint good after judgment by default in the case of *Solomon* v. *Vinson,* 31 Minn. 205, (17 N. W. 340,) and in *Pioneer Fuel Co.* v. *Hager,* 57 Minn. 76, (58 N. W. 828,) held the very same form of complaint bad on demurrer. The complaint in the case at bar was filed nearly six years ago, and a receiver of the railroad, its franchises, and all of the mortgagor's assets, appointed, apparently on this complaint alone, with the acquiescence of the mortgagor. It put in an answer, which seems to have been done rather in aid of the complaint than in defense of the action. During all this time the receiver has been receiving and disbursing many hundreds of thousands of dollars, and, as far as the record shows, no objection has ever been made to the complaint, except such as may be inferred from an exception taken at the close of the trial to the finding of fact that defaults in the mortgage appear by the pleadings, and one stated in the pleadings is shown by the evidence. In our opinion this objection comes too late, and under the rule above stated the complaint should be sustained. By reasonable intendment it can be held to contain an inference of the necessary facts to constitute a de-

fault in the mortgage; that is, that some rolling stock was not in good repair, and some was lost or destroyed which was not replaced, and that these things continued for more than six months before the commencement of the action.

At the end of the default clauses (*a* and *b*) in the mortgage, both as set out in the complaint and in the findings of fact, is the following: "Provided, further, that no entry or sale shall be made by said trustee under the provisions hereof, except upon demand of the holders of not less than two hundred thousand dollars of said bonds then outstanding."

This proviso is restated in different forms in other places in the mortgage, and with other additions to it, but the complaint does not state that the holders of any bonds made any such demand.

We have wholly omitted to consider this, in discussing the question of defaults in the mortgage, because neither in the briefs nor oral arguments was any suggestion made that any such clause existed, and no point is made upon it; and the majority of the court are of the opinion that we should decide the questions raised, and not raise new ones for ourselves.

5. Appellant contends that plaintiff's mortgage is not a first lien on some of the property covered by it, and on which the court found that it is a first lien.

The mortgagor cannot assign this as error. He is not aggrieved by it. As long as the plaintiff's mortgage covers this property, the question of priority is not one between him and the mortgagor, but between him and the prior mortgagees who have not appealed.

6. Appellant, by one general assignment, assigns as error the allowance of attorney's fees to plaintiff and to each of the defendant trustees. These attorney's fees are not provided for in the judgment, but by previous orders. However this may be, we are of the opinion that this assignment of error is too general to raise any question in this court, and we will disregard it.

The foregoing are all the questions raised on this appeal, and the judgment appealed from should be affirmed. So ordered.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 822.)

Application for reargument denied July 16, 1894.